724 F.Supp. 360 (1989)
MELLON BANK, N.A., a National Banking Association, Plaintiff,
v.
GENERAL ELECTRIC CREDIT CORPORATION, a New York Corporation, Defendant.
Civ. A. No. 87-1443.
United States District Court, W.D. Pennsylvania.
October 27, 1989.
*361 Joseph F. McDonough, James R. Walker, Manion McDonough & Lucas, P.C., Pittsburgh, Pa., for plaintiff.
Arthur L. Schwarzwaelder, Dickie McCamey & Chilcote, P.C., Pittsburgh, Pa., for defendant.

*362 OPINION
COHILL, Chief Judge.
Plaintiff, Mellon Bank, N.A. ("Mellon"), sues to recover for defendant's allegedly improper draw on a standby letter of credit. The parties have filed cross motions for summary judgment with several briefs and a considerable amount of evidentiary material. The pertinent agreements are before us, and as to most of the issues raised by the parties there are no apparent disputed issues of material fact. Partial summary judgment on these matters is appropriate. However, the parties have failed to address defendant, General Electric Credit Corp.'s ("GECC") defense of anticipatory repudiation, and therefore the cross motions for summary judgment must be denied.

FACTS
The entity at the eye of this storm is not a party to this litigation. Woodings Consolidated Industries, Inc. ("Woodings") manufactured oil drilling equipment, and over the years Mellon had been Woodings' primary source for financing. By 1986, Woodings owed Mellon more than $5 million.
On April 23, 1985, Woodings entered into a leaseback arrangement with GECC. Under the terms of this agreement Woodings sold GECC a valuable machine (known as a sucker rod machine for reasons we do not care to fathom), and GECC then leased the machine back to Woodings for a specified monthly payment. This contract will be referred to here as the "Lease Agreement."
In conjunction with the Lease Agreement, and to better secure GECC's interest, Woodings and GECC executed a Letter of Credit Agreement. In accord with its terms, Woodings arranged a standby Letter of Credit with Mellon Bank in the amount of $600,000 with GECC as beneficiary. The Letter of Credit issued by Mellon permitted GECC to draw up to $600,000 upon submission of a sight draft by GECC and a typewritten statement that the sum demanded was due and owing.
From 1984 to 1986 Woodings experienced increasing financial losses as a result of a severe downturn in the oil industry. On January 23, 1987 Woodings failed to make its scheduled lease payment to GECC. Defendant also alleges that Woodings failed to present proof of liability insurance for 1987 as required by the Lease Agreement.
Based on these alleged defaults, GECC presented Mellon with a sight draft on the Letter of Credit in the amount of $600,000, and a typewritten statement asserting that Woodings was in default and that the full amount of the draft was due and owing. Mellon paid the full amount to GECC.
Mellon has now sued GECC to recover the $600,000 drawn on the Line of Credit, asserting that Woodings was not in default at the time of the draft, that the $600,000 was not due and owing, and therefore GECC could not properly draw on the Line of Credit. Both sides seek summary judgment, raising a host of intertwined issues which we now attempt to unravel.

DISCUSSION

I. Default

The Letter of Credit Agreement between Woodings and GECC provides in pertinent part:
Under the terms hereof, upon the occurrence of any default under the Lease, or upon the filing of a petition by or against Lessee under Title XI of the United States Code or any successor or similar law, GECC shall have the right to present sight draft(s) and a properly-executed statement to the issuer for any amount not exceeding, in total, the sum of U.S. $600,000.00 and to receive said monies therefrom, at GECC's sole discretion, in lump sum, or in several sums from time to time.
The Letter of Credit issued by Mellon provides in pertinent part:
We [Mellon] undertake to honor from time to time your draft or drafts at sight on us not exceeding in the aggregate U.S. $600,000.00 when accompanied by a signed typewritten statement by GECC stating either (i) that the amount of the *363 accompanying draft is due and owing by Customer to GECC, or (ii) that a petition has been filed by or against Customer under Title XI of the United States Code or a similar or successor law.
On February 11, 1987, GECC presented Mellon with a sight draft for $600,000 and the following typewritten statement:
This is to advise you that Woodings Consolidated Industries, Inc. ("Customer") is in breach of certain agreements with General Electric Credit Corporation ("GECC") and that, accordingly, the amount of SIX HUNDRED THOUSAND AND 00/100 U.S. ($600,000) DOLLARS drawn by GECC under Draft No. 0001 dated February 11, 1987 against Mellon Bank Letter of Credit No. 56540 is due and owing by Customer to GECC.
Mellon honored the draft on the following day.
Mellon describes its claim as a breach of warranty action. Under § 5-111 of the Uniform Commercial Code, a party drawing on a line of credit "warrants to all interested parties that the necessary conditions of the credit have been complied with." 13 Pa. C.S.A. § 5111. Thus a beneficiary warrants to the issuing bank the truth of the statements necessary to a draw on the credit. Pubali Bank v. City National Bank, 676 F.2d 1326 (9th Cir. 1982); Brown v. United States Bank of Omaha, 220 Neb. 684, 371 N.W.2d 692, 701 (1985).
Mellon contends that GECC was required to make two assertions to effect a draw on the Letter of Credit: 1) that Woodings was in default of the Lease Agreement, and 2) that the amount of the draft was due and owing by Woodings to GECC. In fact, GECC made these assertions in its statement accompanying the sight draft. Mellon argues that both of these assertions were false, that under the terms of the Lease Agreement Woodings was not in default, and the sum of $600,000 was not due and owing at the time of the draw. Therefore Mellon concludes that GECC breached its § 5-111 warranties, and Mellon is entitled to recover the amount of the draw.
The parties have focused most of their time and attention on the question of whether Woodings was in default at the time of the draw. It is admitted that Woodings had failed to make its rental payment for January 1985, and therefore was in breach of its contractual obligation. GECC argues that this is a default, and therefore its assertion in support of the draw is truthful. On the other hand, Mellon contends that the Lease Agreement required a formal declaration of default:
XII. DEFAULT: (a) If Lessee breaches its obligation to pay rent when due and fails to cure said breach within ten (10) days, or if Lessee breaches any of the terms hereof or any of terms or any Schedule hereto ... then in either such case, Lessor may declare this Agreement in default. Such declaration shall be by written notice to Lessee and shall apply to all Schedules hereunder except as specifically excepted by Lessor in such declaration ...
GECC did not make a declaration of default prior to the draw. Thus, Mellon argues, under the terms of the Lease Agreement Woodings was not in default at the time of the draw even though it had failed to make a timely payment, and GECC has therefore breached its § 5-111 warranty.
The sad part of all of this is that the issue of Woodings' default is utterly irrelevant to analysis of the § 5-111 warranties. Although GECC represented in its statement to Mellon that Woodings was in default at the time of the draw, and though the Letter of Credit Agreement between Woodings and GECC permits a draw only upon a default by Woodings, the Letter of Credit itself does not require such an assertion prior to a draw. The Letter of Credit states:
We [Mellon] undertake to honor from time to time your draft or drafts at sight on us not exceeding in the aggregate U.S. $600,000.00 when accompanied by a signed typewritten statement by GECC stating either (i) that the amount of the accompanying draft is due and owing by Customer to GECC, or (ii) that a petition has been filed by or against Customer under Title XI of the United States *364 Code or a similar or successor law. (Emphasis added.)
There simply is no requirement that GECC make any representation of Woodings' status under the contract. Default is irrelevant. The only representation necessary to a draw on the Letter of Credit, in the absence of Woodings' bankruptcy, is that the amount of the draft be due and owing. Thus GECC's assertion that Woodings was in default was merely gratuitous under the Letter of Credit. Though the issue of default may be relevant as between Woodings and GECC under their Letter of Credit Agreement, Mellon was not a party to that agreement, and neither the agreement nor its terms were incorporated in the Letter of Credit issued by Mellon. If no assertion of default is required by the Letter of Credit, no warranties attach to such an assertion. Therefore, even if GECC's statement that Woodings was in default was false, GECC would not be liable for breach of a § 5-111 warranty.
We return then to a consideration of what the Letter of Credit does require. As seen above, absent Woodings' bankruptcy, GECC was required to state that the amount of the draft "is due and owing by [Woodings] to GECC." In fact GECC submitted a draft for $600,000 and stated that this sum was due and owing at the time of the draw. Therefore § 5-111 is applicable, and GECC warranted to Mellon the truth of this assertion.
It is admitted that Woodings was late in making one monthly lease payment of $15,011.40. But GECC has asserted that $600,000 was due and owing, apparently on the basis of provisions of the Lease Agreement for acceleration of payments and stipulated loss.
The pertinent provisions of the Lease Agreement are found in Section XII:
XII. DEFAULT: (a) If Lessee breaches its obligation to pay rent when due and fails to cure said breach within ten (10) days, or if Lessee breaches any of the terms hereof or any of terms or any Schedule hereto ... then in either such case, Lessor may declare this Agreement in default. Such declaration shall be by written notice to Lessee and shall apply to all Schedules hereunder except as specifically excepted by Lessor in such declaration. Lessee hereby authorized Lessor at any time after such declaration to enter, with or without legal process, any premises where any Equipment may be and take possession thereof. Lessee shall, without further demand, forthwith pay to Lessor, as liquidated damages for loss of a bargain and not as a penalty, an amount equal to all rentals and other sums then due hereunder, together with the Stipulated Loss Value of the Equipment, calculated as of the date Lessor declared a default hereunder, together with interest thereon at the highest rate allowed by law ... (Emphasis added.)
From these provisions it is clear that acceleration of payments and liquidated damages are invoked only after a declaration of default. Indeed accelerated payments and the Stipulated Loss Value are to be calculated "as of the date Lessor declared a default hereunder."
GECC admits that it did not declare a default prior to the draw on the Letter of Credit. Without such a formal declaration, the acceleration of payments and liquidated damages provisions are not applicable. Thus, on the date of GECC's draw on the Line of Credit, Woodings owed GECC the amount of one tardy rental payment. GECC's assertion that $600,000 was due and owing was erroneous, and constitutes a breach of its warranty under § 5-111.

II. Independence Principle

However, GECC objects to Mellon's reliance on the terms of the underlying Lease Agreement. GECC refers to this portion of the Letter of Credit:
We agree that we shall have no duty or right to inquire as to the basis upon which GECC has determined to present to us any draft under this Letter of Credit.
GECC also invokes the doctrine known as the "independence principle," which prohibits reference to underlying contracts to determine the validity of a draft on a letter of *365 credit. Under this principle the issuing bank may only determine whether the appropriate documents have been presented. It may not contest the truth of the assertions in those documents. Intraworld Industries Inc. v. Girard Trust Bank, 461 Pa. 343, 359, 336 A.2d 316, 324 (1975).
Although GECC states the principle accurately, it does not apply it correctly in this case. The independence principle, and the above-quoted portion of the Letter of Credit, speak only to the bank's obligation to honor the sight draft in the first instance. They do not preclude subsequent investigation and efforts at recovery. Pubali Bank v. City National Bank, 676 F.2d 1326 (9th Cir.1982), appeal after remand, 777 F.2d 1340 (1985).
The purpose of the independence principle, and of the similar provision in Mellon's Letter of Credit, is to provide the beneficiary with an unfettered, immediate remedy upon occurrence of the triggering event on a standby letter of credit. The purpose is not to prevent any subsequent challenge to the validity of the beneficiary's claim, but to ensure that "contractual disputes wend their way towards resolution with money in the beneficiary's pocket rather than in the pocket of the contracting party." Itek Corp. v. First National Bank of Boston, 730 F.2d 19, 24 (1st Cir.1984); C.K.B. & Associates v. Moore McCormick Petroleum, 734 S.W.2d 653, 655 (Tex.1987).
Indeed, if interpreted in the manner GECC suggests, the independence principle would make a nullity of § 5-111. Little purpose would be served if § 5-111 created warranties as to the truth of the conditions necessary to a draw, while the independence principle precluded the bank from contesting the truth of those assertions.
For the reasons stated we conclude that the independence principle and the similar contract provision quoted above are inapplicable to an action for breach of § 5-111 warranties, and do not preclude reference to underlying contractual documents to determine the truth or falsity of the warrantied assertions.

III. Satisfaction

Having crossed these hurdles, Mellon faces another erected by GECC.
Following GECC's draw on the Line of Credit, Mellon and Woodings entered into a Debt Reduction Agreement. By its terms, Woodings liquidated its assets, with proceeds going to retire Woodings' various obligations to Mellon. According to the Agreement, proceeds were applied to satisfy various categories of indebtedness, ranked in descending order. For example, all obligations in Category 1 must be satisfied before proceeds were applied to Category 2 obligations, and so on. Repayment of the $600,000 draw on the Letter of Credit ranked third.
Woodings' assets brought proceeds of nearly $2 million, enough to satisfy in full the first several ranks of indebtedness, including the $600,000 draw by GECC. Thus, GECC argues, Mellon has been paid its $600,000 and it therefore has no claim against GECC for an improper draw.
GECC has taken an accounting mechanism and tried to turn it into a bar to recovery. GECC ignores the $1.6 million shortfall still due Mellon by Woodings. The simple fact is that GECC's actions increased Woodings' obligation to Mellon by $600,000, and if not for that draw the proceeds from Woodings' assets would have gone to satisfy a portion of the existing debt. The fact that the accountants have marked this obligation satisfied on the books does not alter the reality that Mellon is still out an additional $600,000 due to GECC's improper draw.
But this may all be academic. Mellon has established without contradiction from GECC that Woodings has assigned all its claims to Mellon. If Mellon has no claim, Woodings certainly does because it paid $600,000 to Mellon to satisfy its indebtedness for GECC's draw. Section 5-111 warranties extend to both the bank and the customer, so Mellon can assert a breach of warranty claim on Woodings' behalf as assignee of the claim.
GECC notes that Mellon did not plead rights by assignment. However, *366 amendment of the pleadings may be permitted to conform to the evidence, and the undisputed evidence here establishes the existence of an assignment.

IV. Anticipatory Repudiation

There remains one fly in the ointment. In the very last paragraph of the reply brief GECC raises anticipatory repudiation as a defense. GECC contends that prior to GECC's draw on the Letter of Credit, Woodings made clear by word and deed that it would not and could not perform its obligations under the Lease Agreement. GECC argues that Woodings' words and deeds constitute anticipatory repudiation of the contract which excuses GECC from its obligations, including the requirements for formal declaration of default and notice. Without these safeguards Woodings was in immediate default, and GECC was entitled to draw on the Letter of Credit.
With the exception of this passing reference in defendant's brief, apparently tacked on as an afterthought, the issue has not been addressed by the parties. However, GECC has submitted some small quantum of evidentiary material which on its face appears to support GECC's argument. Therefore we cannot ignore it, but neither can we address it intelligently on the inadequate presentation of the issue on the present motions. It does prevent the entry of summary judgment in favor of plaintiff.
We also note that the anticipatory repudiation argument is the basis, at least in part, for GECC's counterclaim. Neither party has addressed the counterclaim on the present motions, and this too prevents entry of final judgment in favor of plaintiff.

CONCLUSION
For the reasons stated above, partial summary judgment will be granted in favor of Plaintiff Mellon in the following respects:
1) GECC failed to make a formal declaration of default as required by the Lease Agreement, and as a result acceleration of payments and liquidated damages provisions are inapplicable.
2) Absent anticipatory repudiation, GECC's assertion in support of its draw on the Letter of Credit, that $600,000 was due and owing, was erroneous and in breach of GECC's § 5-111 warranty.
3) The independence principle and the like provision in the Letter of Credit are inapplicable and do not preclude reference to the underlying contractual documents to determine the truth of the warrantied assertions.
Nonetheless, complete summary judgment may not be entered in favor of plaintiff because plaintiff has not addressed the defense of anticipatory repudiation. Furthermore, the parties have failed to address defendant's counterclaim.
We do not know if the matter of anticipatory repudiation is susceptible to treatment on summary judgment motion in this case. Therefore we will afford counsel an opportunity to review this Opinion and to file a supplemental summary judgment motion if desired.
An appropriate Order accompanies this Opinion.

ORDER
AND NOW, this 27th day of October, 1989, in accord with the accompanying Opinion, it is hereby ORDERED that the cross motions for summary judgment are DENIED, but partial summary judgment is GRANTED in favor of plaintiff as described in the Opinion.
Either party may file a Supplemental Motion for Summary Judgment on the defense of anticipatory repudiation and/or defendant's counterclaim, with supporting brief and evidentiary material, on or before November 13, 1989. Any response with brief and evidentiary material shall be filed on or before November 27, 1989.
If no motions are forthcoming, this matter will be scheduled at a later date for Pretrial Conference and Trial.