Titone, J.
(dissenting). The issue in this case is whether an issuer that has paid on a letter of credit may recover its payment from the beneficiary where the payment was made on the strength of an affidavit by the beneficiary and the facts asserted in the affidavit were later shown to be false. The majority opinion does not explicitly address this question, but its holding impliedly resolves it against the issuer. Since I conclude that the issuing bank is entitled to recover under these facts, I dissent.
I.
The majority persuasively explains why the so-called "independence principle” embodied in the Uniform Customs and *24 Practice for Documentary Credits (the UCP) does not preclude an issuer of a letter of credit from suing the beneficiary for the alleged overpayments under the facts in this case. As the majority states, the independence principle is fulfilled once the issuer has met its obligation to honor the letter of credit upon presentation of documents that conform to the letter of credit’s demands (see, Dolan, Letters of Credit: Commercial and Standby Credits ¶ 9.04, at 9-48 [2d ed 1991]). At that point, both the letter of UCP and the underlying policies favoring the facilitation of commerce through prompt and predictable payment are satisfied (see, id.; see also, All Serv. Exportacao, Importacao Comercio v Banco Bamerindus, 921 F2d 32, 36). Here, the issuer honored the letter of credit in a timely manner and, consequently, the independence principle is not implicated. Thus, there is nothing in that principle to prevent the issuer from pursuing the beneficiary in a postpayment lawsuit to recover any overpayments. The next logical question is whether there is a legal basis for such recovery.
II.
As to that question, the critical factor to consider is the nature of the letter of credit transaction itself. As the majority has stated, such transactions typically involve three separate relationships: the one between the issuer and its customer, the one between the customer and the beneficiary and, finally, the one between the beneficiary and the issuer (see, First Commercial Bank v Gotham Originals, 64 NY2d 287, 294).
It has often been observed that the relationship between the beneficiary and the issuer is "separate and independent from any obligation of its customer to the beneficiary * * * as well [as] from any obligation of the issuer to its customer under their agreement” (id., at 294; see, United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 256-257). This fundamental tenet is not only the source of the "independence principle,” but is also the root of the corollary proposition that the " 'parties [to a letter of credit transaction] deal in documents’ ” (First Commercial Bank v Gotham Originals, supra, at 294-295, quoting Harfield, Letters of Credit, at 76 [ALI-ABA Uniform Commercial Code Practice Handbook 1979]; see, United Bank v Cambridge Sporting Goods Corp., supra, at 259). It follows from these principles that it is the documents and only the documents that must be consulted in determining whether any of the parties has a cause of action against another party.
In the present postpayment dispute between the issuer and the beneficiaries, the starting place for analysis is the letters of *25 credit themselves, since they are the documents that govern the rights and obligations of those parties. The standby letters at issue here provided that the issuer would pay the amount demanded by the beneficiaries within 10 days after presentation of a draft along with a notarized statement certifying that the requested amount represents the amount due to the beneficiary under a separate identified note between the beneficiary and the issuer’s customer. It is this notarized statement — and its alleged falsity — that forms the basis of defendant issuer’s claim.
It seems to me that the beneficiaries’ notarized statements, which were required by the letters of credit and thus were critical components of the documentary transaction between the beneficiaries and defendant issuer, were sufficient to create an obligation on the part of the former and gave rise to a corresponding right on the part of the latter to sue in the event of falsity. The specific obligation of the beneficiary in question is that of any party who makes a sworn representation to be accurate. Indeed, whenever a sworn statement of fact is requested or required, it is implicit that the parties expect the statement to be true. And, where, as here, money is obtained on the strength of the statement, a cause of action for "money had and received” (see, Schank v Schuchman, 212 NY 352) or breach of warranty (cf., UCC 5-111) should lie to enable the party who innocently overpaid to recoup its overpayment.
Significantly, in cases arising under the Uniform Commercial Code, a beneficiary is deemed to warrant "that the necessary conditions of the credit have been complied with” when it presents its letter of credit for payment (UCC 5-111 [1]). While the issuer cannot invoke a breach of this warranty as an excuse for refusing to honor the letter of credit, the breach may become the basis for a subsequent suit "to recover payment already made” (3 White and Summers, Uniform Commercial Code § 26-8, at 161 [Practitioner’s 4th ed]).
In Mellon Bank v General Elec. Credit Corp. (724 F Supp 360), for example, a beneficiary of a standby letter of credit submitted to the issuer both a demand for payment and a statement certifying that the underlying secured debt had been accelerated. Having subsequently learned that the asserted acceleration had not occurred, the issuer, which had already paid on the draft, brought an action to recover its overpayment. The court held in the issuer’s favor and permitted recovery for breach of the UCC 5-111 warranty, even though the presented documents had been facially conforming and resolution of the *26 dispute required the court to look beyond those documents to determine the parties’ rights. The result in Mellon Bank is consistent with the views expressed by the commentators (see, Dolan, op. cit., ¶ 6.07; 3 White and Summers, op. cit., at 161).[1]
The facts in Mellon Bank are analogous to those presented here. To be sure, this case is governed by the UCP and, consequently, the specific warranty provided for in UCC 5-111 is inapplicable (see, UCC 5-102 [4]). Nonetheless, there is no sound reason not to apply the same analysis in this UCP case, since the beneficiaries’ notarized representations are the functional equivalent of the UCC 5-111 warranty and recognition of a cause of action under these circumstances would not conflict with any principle set forth in the UCP (cf., United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 258, n 2, supra). Manifestly, if the UCC provisions governing letters of credit are not offended by a rule permitting the court in a post-payment lawsuit to look beyond the letter of credit, then the same principle should apply in a case arising under the UCP, since both the UCP and the letter of credit article of the UCC are the same in their adherence to the "independence principle” and its related rules of law.
I would note that the dictum in United Bank v Cambridge Sporting Goods Corp. (41 NY2d 254, 258, n 2, supra), on which the plaintiff beneficiaries rely, is not helpful to the analysis in this case. In United Bank, a case involving a fraud claim, the Court stated in a footnote that even though the Uniform Commercial Code (UCC) is not applicable to transactions governed *27 by the UCP, the UCP "would not, in the absence of a conflict, abrogate the precode case law (now codified in Uniform Commercial Code, § 5-114) and that authority continues to govern even where [UCC] article 5 is not controlling” (41 NY2d, at 258, n 2, supra, citing White and Summers, Uniform Commercial Code § 18-6, at 613-614, 624-625).
UCC 5-114 (2), the specific provision referred to in United Bank, gives the issuer of a letter of credit the option of refusing to honor in certain cases involving fraud. The section was necessary to provide relief from the otherwise rigid rule set forth in UCC 5-114 (1) that an issuer must honor a letter of credit when it is presented with facially conforming documents. The provision is neither necessary nor relevant when the issuer seeks to recover in a postpayment proceeding, since at that point both the duty to honor and the limited exceptions to that duty are moot. Thus, although the right to dishonor may be conditioned on the existence of a fraud, it cannot be inferred from the United Bank dictum that an issuer’s right to recover a previously made payment is similarly limited.
III.
Since there is no rule of law derived from the UCP or the common law that would preclude defendant’s recovery on a nonfraud claim and since falsity of the notarized statement demanded as a condition of the credit gives rise to a viable basis for recovery, the only remaining question is whether there is anything in the letters of credit themselves that would prevent the issuer from establishing its entitlement to relief in this case. The majority finds such a barrier in a "merger” clause contained in the letters of credit. However, the so-called "merger” clause is of limited utility to the beneficiaries, since it appears to be aimed solely at limiting defendant issuer’s obligations to the terms set forth within the four corners of the letters of credit.[2] The clause does not appear to pertain at all to the beneficiaries’ obligations to the issuer. Indeed, as a general matter, it seems unlikely that a letter of credit would contain a conventional, mutually binding merger clause, since such documents are not bilateral agreements, but rather are unilat *28 eral documents drafted and dispensed by an issuer at the behest of its customer.
In any event, even if the purported "merger” provision in these letters of credit were deemed to limit the beneficiaries’ obligations as well as those of the issuer, I would not conclude that it precluded this issuer from showing that the beneficiaries’ sworn statement as to what was owed under their notes was inaccurate. The purpose of a merger clause is "to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing” (Matter of Primex Intl. Corp. v Wal-Mart Stores, 89 NY2d 594, 599). Here, there has been no attempt made to use an extrinsic document to vary or contradict the beneficiaries’ obligations under the letters of credit. To the contrary, the issuer in this case is basing its claim for relief specifically on the beneficiaries’ obligations under a particular term of the letters of credit, i.e., the demand for notarized certifications of the amount owed, and on the implied obligation to submit certifications that are truthful. Thus, the issuer’s claim involves nothing that would be prohibited by a merger clause.
That the truthfulness of the certification cannot be determined without looking to the note between the beneficiaries and the issuer’s customer does not alter the analysis. In this instance, the terms of the note are being used not to create a new or different set of obligations on the beneficiaries’ part, but rather as proof of the beneficiaries’ compliance with their obligations under the letters of credit. Thus, the theories and rules surrounding the preclusive effect of merger clauses are inapplicable.
Indeed, it would make little sense to hold that in these circumstances the issuer is precluded by the "four corners” doctrine from using the beneficiaries’ note to establish the falsity of their certifications. Such a holding would mean that a "condition of the credit” that was specifically described within the four corners of the letters of credit themselves would be, in effect, unenforceable. Manifestly, the rule against the use of extrinsic evidence to vary or contradict the terms of a writing does not require such an absurd result.
Accordingly, contrary to the majority’s result, I would hold that the issuer in this case is entitled to recover from the beneficiaries any overpayments it made under the terms of the letters of credit. Such a result is consistent with both the applicable legal principles governing letters of credit and the general principle that a party ought not to be permitted to retain a *29 windfall, at least in the absence of some countervailing policy consideration. In this case, the majority’s result leaves plaintiffs beneficiaries with moneys to which they were not entitled, despite the fact that the only identifiable legal tenet or policy concern, i.e., the "independence principle,” is not implicated. Since I can find no rule of law that compels such an undesirable result, I dissent and vote to reinstate the Supreme Court judgment.
Chief Judge Kaye and Judges Smith, Levine, Ciparick and Wesley concur with Judge Bellacosa; Judge Titone dissents and votes to reverse in a separate opinion.
Order affirmed, with costs.

. The majority relies on the following statement in Dolan’s treatise: "Nothing in Section 5-111 suggests that breach of the underlying agreement constitutes a breach of the Section 5-111 warranty. That warranty relates to the conditions of the credit, not to the conditions of the underlying agreement” (Dolan, op. cit., ¶ 9.04, at 9-49). That statement, however, merely emphasizes what is plain from the language of the cited Code provision, i.e., that the implied warranty that is created by the UCC does not automatically incorporate all of the terms and obligations of the underlying agreement; instead, it extends only to those specific terms and conditions that have expressly been made "necessary conditions of the credit.” The Dolan statement does not and cannot mean that the courts may never look to the parties’ conduct in relation to an underlying agreement to determine whether the implied warranty relating to the "conditions of the credit” has been breached. If that were the case, the issuing bank in Mellon Bank could not have obtained relief. Indeed, since the "conditions of the credit” often relate to the parties’ conduct in relation to the underlying agreement (as they do both in this case and Mellon Bank), the broad restriction that the majority suggests would render the UCC 5-111 implied warranty pragmatically useless in a wide variety of cases.

. The clause in question states: "This Letter of Credit sets forth in full our [the issuer’s] undertaking, and such undertaking shall not in any way be modified, amplified or amended by reference to any document, instrument, agreement or note referred to herein and any such reference shall not be deemed to be incorporated herein by reference to any such document, instrument, agreement or note.”