**ARTOC BANK AND TRUST, LIMITED, Appellant,**

v.

**SUN MARINE TERMINALS, INC., Appellee.**

**No. 9611.**

Court of Appeals of Texas, Texarkana.

Sept. 20, 1988.

Rehearing Denied Nov. 15, 1988.

---

John Martin Klein, Timothy J. Henderson, Pendergraft, Elam & Simon, Houston, for appellant.

James D. Wise, Brown, Sims, Wise & White, Houston, for appellee.

BLEIL, Justice.

Artoc Bank and Trust, Limited appeals from an adverse summary judgment granted in favor of Sun Marine Terminals, Inc. Artoc claims that the trial court erred in granting Sun's cross-motion for summary judgment because the evidence raises issues of fact with respect to Sun's liability to Artoc for misrepresentation, breach of contract and breach of warranties. Artoc also asserts that the trial court erred in denying its motion for partial summary judgment because the evidence establishes Artoc's right to judgment for liquidated damages. We agree.

On September 1, 1978, Sunoco Terminals, Inc., the corporate predecessor to Sun Marine Terminals, Inc., entered into a gasoline "terminaling service" agreement with Uni Oil, Inc., whereby Sun was to provide a terminal-storage system with facilities and services for the movement, handling, and storage of gasoline for Uni's Ingleside refinery. In return, Uni was to pay a monthly lease payment, adjusted annually to reflect labor and cost increases. The agreement also required Uni to provide Sun with an irrevocable letter of credit issued by a bank in the amount of $250,000.00. This letter of credit was to be renewed until Uni's total obligation under the agreement was fulfilled. Uni's failure to furnish the letter of credit would constitute a breach of the contract, and the remaining balance due under the agreement would become due immediately. Sun would then be authorized to use the standby letter of credit to draw upon Uni's account and the bank would be authorized to pay Sun in order to meet Uni's total obligation for the full term of the agreement. Uni approached its bank, Artoc, a foreign bank, to issue the letter of credit to Sun. However, Sun requested that a domestic bank issue the letter of credit; thus, Artoc asked Southeast Bank to issue the letter of credit to Sun.

On or about April 22, 1981, Artoc provided Southeast Bank with the terms of the letter of credit. On May 1, 1981, Southeast Bank issued its own letter of credit. According to its terms, the letter of credit was to be automatically renewed unless Southeast Bank notified Sun in writing thirty days prior to expiration, of an election not to renew. On January 20, 1982, Southeast Bank advised Artoc that it had extended the letter of credit, which was to expire on March 9, 1982, to March 9, 1983. On January 17, 1983, Southeast Bank notified Sun that the letter of credit would not be renewed. Sun notified Uni that it was in breach of contract and that the remaining balance due under the agreement was due immediately. At that time, Uni's account with Sun was current.

Sun presented Invoice No. 0167 to Southeast Bank for payment pursuant to the

letter of credit. The terms of the letter of credit required that the draft be accompanied by the following documents: (1) a copy of a commercial invoice from Sun listing the services rendered which had not been paid on the due date; and (2) a letter from Sun signed by the vice-president and secretary/treasurer stating that Uni had failed to pay an invoice covering services rendered. Invoice No. 0167, which Sun presented to Southeast Bank, showed $4,697,907.08 as the balance of the gasoline terminaling and handling agreement due immediately. Southeast Bank declined to pay pursuant to this presentment, because the invoice was not a statement for "services rendered" which had not been paid on the due date. Sun then submitted Invoice No. 0167–A for $245,261.98—the amount available under the letter of credit—covering "services in respect of lease payments for tankage and use of terminal facilities ... which services have been rendered and have not been paid on due date." Southeast Bank paid Sun the amount of the letter of credit and debited Artoc's account for the same amount.

Artoc filed suit against Sun for liquidated damages, exemplary damages, attorney's fees, interest on the judgment, and court costs it claimed to have suffered as a result of its account having been debited by Southeast Bank. Artoc's action charged Sun with misrepresentation, breach of contract and breach of warranty. Artoc acknowledges that Southeast Bank properly paid the letter of credit. Artoc asserts that Sun's invoice did not actually cover "services rendered" and that Sun intentionally misrepresented that the invoice was for "services rendered" in order to receive payment.

Artoc contends that the trial court erred in granting Sun's cross-motion for summary judgment because the summary judgment evidence raises fact questions whether Sun is liable to Artoc for intentional, negligent or grossly negligent misrepresentation, breach of contract, and breach of warranties. Artoc further maintains that the trial court erred in denying its motion for partial summary judgment.

In reviewing summary judgment proceedings, we determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to an essential element of the cause of action. Tex.R.Civ.P. 166a. In determining whether a material fact issue exists, evidence favorable to the nonmovant is taken as true and every reasonable inference in favor of the nonmovant is indulged in and all doubts are resolved in the nonmovant's favor. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex. 1975).

A typical letter of credit involves three separate contracts: (1) the contract between the issuing bank and the issuing bank's customer; (2) the contract between the issuing bank and the party receiving the letter of credit; and (3) the contract between the customer who procured the letter of credit and the person who receives it. *East Girard Savings Association v. Citizens National Bank and Trust Company of Baytown*, 593 F.2d 598 (5th Cir. 1979).

■ The beneficiary of a letter of credit, by transferring or presenting a documentary draft or demand for payment, warrants to all interested parties that the necessary conditions of the credit have been complied with. Tex.Bus. & Com.Code Ann. § 5.111 (Vernon 1968). Artoc contends that Sun breached this warranty by presenting a draft accompanied by an invoice which was not in fact for "services rendered" as stated on its face and as required by the terms of the letter of credit.

Because we find that the provisions in these documents are clear and unambiguous, we may determine the meaning of the term "services rendered." We construe the letter of credit as a whole in an effort to determine the intention of the parties to the contract. *Coker v. Coker*, 650 S.W.2d 391 (Tex.1983). "Services rendered" as stated in the letter of credit, covers tankage and the use of terminal facilities provided to Uni by Sun before the payment is sought on the letter of credit; "services rendered" as stated in the invoice did not purport to cover design and con-

struction of facilities. The letter of credit required that the payment for services be past due and unpaid.

Because Uni was current in its monthly payments, the invoice Sun submitted did not cover "services rendered." We conclude that Sun breached the presentment warranty contained in Tex.Bus. & Com. Code Ann. § 5.111, and that the trial court therefore erred in granting Sun's motion for summary judgment.

 Artoc also contends that the trial court erred in denying its motion for partial summary judgment. We agree. Artoc's motion sought a partial summary judgment for liquidated damages in the amount of $245,261.98, the amount Southeast Bank paid on the letter of credit, together with attorney's fees, and prejudgment and post-judgment interest on the amount of damages.

In the trial court, Artoc filed a motion for partial summary judgment as to liquidated damages, proper interest on the judgment, and attorney's fees. Ordinarily, when—as here—a motion for summary judgment or partial summary judgment is denied, the order denying the motion is interlocutory and not appealable. *Novak v. Stevens*, 596 S.W.2d 848 (Tex.1980). When, however, both parties have moved for summary judgment and the trial court grants one motion and denies the other, we properly proceed to review the denial of the motion for summary judgment. *Catholic Charities of Diocese of Galveston v. Harper*, 161 Tex. 21, 337 S.W.2d 111 (1960); *Sorsby v. State*, 624 S.W.2d 227 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ). Our procedural rules also contemplate this action. Tex.R.App.P. 81(c); Tex.R.Civ.P. 166a. We have determined that Sun's cross-motion for summary judgment was improperly granted because the summary judgment evidence established that Sun breached the warranty of presentment.

We now proceed to examine Artoc's motion for partial summary judgment as to liquidated damages. The same evidence which shows the breach of warranty establishes that Artoc had liquidated damages in the amount of $245,261.98. The uncontro-

verted affidavit of Timothy Henderson, an attorney for Artoc, establishes that reasonable attorney's fees in connection with the motion for partial summary judgment are $30,000.00. Having found no material fact issue, we conclude that the court below should have granted Artoc's motion for partial summary judgment.

We reverse the trial court's judgment and render judgment that Artoc recover $245,261.98 from Sun, together with $30,-000.00 attorney's fees and allowable interest on the judgment; we remand the remainder of the cause to the trial court.