**SUN MARINE TERMINALS, INC.**
**f/k/a Sunoco Terminals, Inc.,**
**Petitioner,**

v.

**ARTOC BANK AND TRUST,**
**LIMITED, Respondent.**

No. C–8271.

Supreme Court of Texas.

Sept. 6, 1990.

Rehearing Overruled Nov. 14, 1990.

James D. Wise, James N. Isbell, Polly Kinnibrugh, Houston, for petitioner.

Timothy J. Henderson, Houston, for respondent.

## OPINION

HECHT, Justice.

The issue in this case is whether the beneficiary of a letter of credit wrongfully obtained payment upon that credit by making statements in documents presented to the issuer that were false. The dispute centers upon the warranty provided by section 5.111(a) of the Uniform Commercial Code ("the UCC"), TEX.BUS. & COM.CODE § 5.111(a).[1] The trial court granted summary judgment for the beneficiary. The court of appeals reversed and rendered judgment for the issuer. 760 S.W.2d 311. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

### I

Sunoco Terminals, Inc., now Sun Marine Terminals, Inc., and Uni Oil, Inc. entered into a "Gasoline Terminalling and Handling Agreement" which obliged Sun to construct and operate a terminal for storing gasoline from Uni's refinery and loading the gasoline onto vessels at the gulf port

---

**1.** All references to the UCC are to the corresponding sections of the Texas Business and Commerce Code.

near Ingleside, Texas. The terminal was located at the dock and consisted of a storage tank, pump and lines. Uni agreed to pay Sun a "base price" of $32,500 per month for tankage plus charges for volumes of gasoline actually handled, subject to annual adjustment. Uni also agreed to renegotiate the price in the event any governmental authority ever required Sun to make improvements in the facilities. Uni expressly recognized that it had "a duty to share in the cost of those new required facilities subject to Uni's use". The agreement called for Sun to invoice Uni each month for services rendered the preceding month. The term of the agreement was fifteen years.

The agreement also required Uni to provide Sun with a letter of credit. Specifically, the agreement stated:

Uni shall provide [Sun] with an irrevocable letter of credit issued by a bank, and in a form, satisfactory to [Sun] in an amount of $250,000, for a term of not less than six months. Twenty days prior to the expiration of said letter of credit, Uni shall furnish [Sun] with a new irrevocable letter of credit for a period of not less than six months in the amount of $250,000 plus Annual Base Price Adjusted. Said irrevocable letter of credit shall be renewed in accordance with the above procedure until the total obligation of Uni under this agreement is fulfilled. The failure of Uni to furnish a required irrevocable letter of credit in accordance with the above procedure shall constitute a breach of this contract and the remaining balance due under this agreement shall immediately become due and payable. [Sun] will thereupon be authorized to use the letter of credit—standby to draw upon Uni's account, and the bank is authorized to pay to [Sun] money sufficient to meet [Uni's] total obligation for the full term of this Agreement.

Uni requested its bank in the Bahamas, Artoc Bank and Trust, Limited, to issue the required letter of credit, but Sun insisted that the issuer be a domestic bank. To satisfy Sun, Artoc obtained a letter of credit from Southeast First National Bank of Miami. The letter of credit authorized payment of a maximum amount of $245,261.98 upon presentation of a sight draft accompanied by:

1—Copy of commercial invoice from [Sun] covering the services rendered and which has not been paid on due date.

2—Letter from [Sun] purportedly signed by vice president and secretary treasurer stating that [Uni] has failed to pay an invoice (see 1. above) covering services, in respect of lease payments for tankage and use of terminal facilities in conformity with the terms of [Sun's] lease and terminalling agreement with [Uni].

The letter expired a little over ten months after it was issued and was renewed by Southeast for an additional year. Shortly before the second expiration date, Southeast informed Sun that Southeast would not renew the letter of credit. Sun then notified Uni that its failure to furnish a renewed letter of credit breached the terminalling agreement, and Sun demanded payment of the full amount due for the balance of the term of the agreement. At the time Uni was current in its monthly payments to Sun.

When Uni failed either to furnish a renewed letter of credit or to pay the balance due for the remainder of the term of the agreement, Sun presented to Southeast the documents required by the letter of credit to draw down payment: a sight draft for the full amount of the letter of credit, a copy of an invoice from Sun to Uni, and a letter from Sun stating that Uni had not paid the invoice. The invoice was for $4,697,907.08 and stated:

This invoice represents balance of Gasoline Terminalling and Handling Agreement ... that is due and payable immediately. This invoice covers services in respect of lease payments for tankage and use of terminal facilities in conformity with the terms of our lease and terminalling agreement with [Uni], which services have been rendered and have not been paid on due date.

Southeast honored Sun's draft and charged the amount paid against Artoc's account.

Artoc then sued Sun for fraud, breach of the agreement between Sun and Uni, and breach of the warranty contained in section 5.111(a) of the UCC. The gist of all of Artoc's causes of action is the allegation that in the documents Sun presented to Southeast Sun misrepresented that Uni had failed to pay for "services render*ed* "—that is, in the past, as contrasted with services *to be rendered* in the future—when in fact Uni was current in its monthly payments. Artoc acknowledges that the documents Sun submitted to Southeast complied, on their face, with the specifications of the letter of credit and that Southeast properly honored Sun's draft. Artoc contends, however, that the statements in the documents were not true. Artoc seeks to recover actual damages including return of the funds paid to Sun on the letter of credit, exemplary damages for Sun's fraud, interest, attorney fees and costs.

Sun moved for summary judgment, and Artoc moved for partial summary judgment on its claims for liquidated damages. The trial court granted Sun's motion and denied Artoc's. The court of appeals reversed and rendered judgment for Artoc on the basis of Artoc's argument that Sun's invoice did not cover services rendered because Uni was current in its monthly payments. Accordingly, the appeals court held that in presenting its demand for payment under the letter of credit Sun breached the warranty under UCC section 5.111(a) "that the necessary conditions of the credit have been complied with". 760 S.W.2d at 313–14.

## II

■ Before focusing on the area of dispute in this case, we must briefly survey the surrounding landscape of letter of credit law. A letter of credit is an engagement by its issuer to honor demands for payment by the beneficiary upon compliance with the conditions specified in the letter. UCC § 5.103(a)(1). The pertinent conditions, it must be emphasized, are those contained in the letter itself, because a letter of credit is part of a larger transaction that typically involves two other agreements: one between the issuer and its customer who is ultimately responsible for payments made upon the letter of credit and one between the customer and the beneficiary which creates the transaction that calls for issuance of the letter of credit. *Philipp Bros. v. Oil Country Specialists*, 787 S.W.2d 38, 40 (Tex.1990) (per curiam); *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 112 (Tex.1979); *East Girard Sav. Ass'n v. Citizens Nat'l Bank & Trust*, 593 F.2d 598, 601 (5th Cir. 1979). The purpose of a letter of credit is to assure payment when its own conditions have been met, irrespective of disputes that may arise between the parties concerning performance of other agreements which comprise the underlying transaction. Thus, the viability of a letter of credit as a payment device depends upon its independence from the transaction of which it is a part. *See Philipp Brothers*, 787 S.W.2d 38, 40. This principle, sometimes referred to as the "independence principle", means that with certain exceptions specified in section 5.114(b) of the UCC, determining whether payment is due upon a letter of credit must be made without regard to whether the customer and beneficiary have discharged their respective obligations to one another.

Section 5.111(a) of the UCC states in part:

> Unless otherwise agreed the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the necessary conditions of the credit have been complied with.[2]

The phrase "necessary conditions of the credit" is not further defined in the statute. The official comment adds only: "So far as the draft or the relevant documents are concerned, the beneficiary's warranties are usually those of an ordinary transferor or indorser for value although varying cir-

---

**2.** We are not concerned in this case with the last sentence of section 5.111(a), which refers to additional warranties arising under other provisions of the UCC.

cumstances may alter this." The provision has received little judicial attention (more often, letter of credit litigation seeks to stop payment rather than to recover it after it has been made, for obvious, pragmatic reasons). Among the scant authorities, several hold that under section 5.111(a) a beneficiary warrants that the documents presented by the beneficiary comply in form, that is, facially, with the requirements of the letter of credit. *See Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230, 238 (5th Cir.1983); *Delta Brands, Inc. v. MBank Dallas*, 719 S.W.2d 355, 359 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *First Arlington Nat'l Bank v. Stathis*, 115 Ill.App.3d 403, 71 Ill.Dec. 145, 151–52, 450 N.E.2d 833, 839–40 (1983); L. Weeramantry & W. Schlichting, IX Banking Law § 234.08, at 234–54 to 234–55 (1990) ["Weeramantry"]. *But see* Dolan, *Letters of Credit, Article 5 Warranties, Fraud, and the Beneficiary's Certificate*, 41 Bus. Law. 347, 350–51 (1986) ["Dolan"] (section 5.111(a) warranty should not extend to patent defects in documents presented). Some hold that a beneficiary also warrants under this provision that no conditions excusing payment exist under section 5.114(b). *See Delta Brands*, 719 S.W.2d at 359; *Stathis*, 71 Ill.Dec. at 151–52, 450 N.E.2d at 839–40. All authorities which have addressed the issue agree that under section 5.111(a) a beneficiary warrants that all statements made in documents presented to obtain payment are true. *See Barclay Int'l v. First Alabama Bank*, 557 So.2d 1201, 1206 (Ala.1989); *Brown v. United States Nat'l Bank*, 220 Neb. 684, 371 N.W.2d 692, 701 (1985); *Pubali Bank v. City Nat'l Bank*, 676 F.2d 1326, 1328–29 (9th Cir.1982), *opinion following remand*, 777 F.2d 1340 (9th Cir.1985); *Mellon Bank v. General Elec. Credit Corp.*, 724 F.Supp. 360, 363 (W.D. Pa.1989); Weeramantry, *supra*, § 234.08, at 234–54 to 234–55; Dolan, *supra*, at 349.

■ In this case, Southeast issued a letter of credit with Sun as the beneficiary at the request of Southeast's customer Artoc, which, in turn, acted at the request of its customer, Uni. The underlying agreement is between Sun and Uni. The parties do not dispute that the documents Sun presented to draw upon the letter of credit facially complied with the requirements of the letter—that is, they stated what the letter required them to state. The parties also do not dispute that payment upon Sun's demand was proper and was not excused for any reason set out in section 5.114(b). Further, the parties agree, and we hold, that under section 5.111(a) a beneficiary warrants to interested parties, including the issuer's customer, the truth of statements made in documents presented to obtain payment. The rather narrow areas of dispute in this case are whether the statements in Sun's documents were true—simply put, whether Uni owed Sun for services rendered—and how that issue is to be determined.

■ Taking the latter issue first, Artoc argues that the truth of a beneficiary's statements made to obtain payment upon a letter of credit must be viewed solely in the light of the letter itself. To use the agreement underlying the transaction for this purpose, Artoc argues, would violate the independence principle which we have set out above. Thus Artoc contends that whether Uni in fact owed Sun for services rendered at the time payment was demanded, as Sun stated to Southeast in the presentment documents, must be determined solely from the terms of the letter of credit without reference to the agreement between Sun and Uni.

Artoc's position is simply untenable. One cannot ascertain by looking solely to the terms of the letter of credit whether Uni actually owed Sun for services rendered because the letter of credit does not state what services Sun was to perform or how and when Uni was to pay. One must refer instead to the agreement which does set out Sun's and Uni's obligations to one another. This does not violate the independence principle, which requires that the terms of a letter of credit alone control whether payment is to be made. Payment in this case has already been made; the letter of credit has served its purpose. The question remaining is whether Sun obtained payment under false pretenses, and

to answer that question, one must look to the agreement between Sun and Uni.

■ The terms of the agreement between Sun and Uni clearly provide that when Uni failed to furnish a renewed letter of credit, it immediately owed Sun the balance of payments for the full remaining term of the agreement. Sun's statements that Uni had not paid all it owed were thus true. Artoc's contention that any amount Uni owed Sun was for something other than services rendered ignores the nature of the services Sun agreed to and did perform. Sun agreed to construct and operate gasoline storage facilities for Uni. Uni's monthly payments over the entire fifteen-year term of the agreement were to compensate Sun for operation services that it was continuing to render and construction services that it had already rendered. Uni's obligation to compensate Sun not only for use of the terminal facilities but for their construction is further reflected in Uni's agreement to share in the cost of any required improvements. Uni's failure to furnish Sun a renewed letter of credit accelerated its obligation to pay Sun for construction of the terminal. Artoc's argument that this accelerated obligation was not for services rendered is contradicted by the express language of the agreement that authorized Sun to draw upon the letter of credit in such circumstances. Thus, Sun's statements that Uni had not paid all it owed for services rendered were also true.

Having concluded that the statements Sun made in its presentment documents were not false, we hold that Sun did not breach its warranty to Artoc under section 5.111(a) of the UCC.

### III

Artoc's allegations of fraud and breach of contract, like its claim for breach of warranty under section 5.111(a), also rest upon its assertion that Sun made false statements to obtain payment upon the letter of credit. Because this assertion is incorrect, Artoc is not entitled to recover on these other claims.

The record establishes that Sun was entitled to summary judgment against Artoc. Accordingly, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.