ZIPP INDUSTRIES, INC., Appellant,

v.

RANGER INSURANCE COMPANY, Appellee.

No. 07–00–0046–CV.

Court of Appeals of Texas, Amarillo.

Jan. 18, 2001.

---

McWhorter, Cobb & Johnson, Jack P. Driskill, Lubbock, for appellant.

Jones, Flygare, Brown & Wharton, James L. Wharton, G. Douglas Welch, Lubbock, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

BOYD, Chief Justice.

In this appeal, and in three issues, appellant Zipp Industries, Inc. (Zipp) challenges a summary judgment in favor of appellee Ranger Insurance Company (Ranger) on Zipp's claims arising out of a draw made by Zipp upon a letter of credit to pay insurance premiums made after confirmation pursuant to Chapter 11 of the Bankruptcy Code. Disagreeing that any of the three issues reveal reversible error, we affirm the judgment of the trial court.

Zipp's predecessor, Anderson Grain Company (Anderson) operated grain storage facilities and was required to maintain a bond to cover any shortages which might occur. In doing so, it obtained a $500,000 bond from Ranger in 1993. To secure its bond, Ranger required an unconditional and irrevocable letter of credit in the amount of $250,000.[1] Anderson obtained such a letter from Texas Commerce Bank. In January 1995, Texas Commerce Bank declined to renew the letter of credit and Anderson obtained a replacement letter of credit from the Dai Ichi Kangyo Bank, Ltd. (the Bank) in the amount of $200,000.

In May 1996, Anderson sought to replace the Ranger bond with one from another insurer. It did so contingent upon Ranger's release of the letter of credit securing the first bond. In response to that request, Ranger returned the expired Texas Commerce Bank letter of credit rather than the letter of credit from the Bank. This error apparently went unnoticed by the parties.

Ranger's bond expired on September 20, 1996. It is undisputed that no claims for grain shortages were ever made against this bond. In October 1996, Anderson and three related companies[2] filed voluntary petitions in bankruptcy seeking reorganization under Chapter 11 of the Bankruptcy Code. Ranger filed a claim in that proceeding for approximately $130,000 in unpaid premiums. This claim was not contested by Anderson when it was filed. On May 27, 1997, the bankruptcy court signed an order confirming the reorganization plan of the four companies. A *nunc pro tunc* order correcting the May 27 confirmation order was signed June 5, 1997. The reorganization included a merger of Anderson and Zipp with the merged company using the Zipp Industries name. The plan gave creditors, including Ranger, ownership of the merged company's stock and an unsecured note for 90 percent of their claims.

On July 8, 1997, Ranger presented a draft drawn on the letter of credit from the Bank for $130,000 in premiums, which was paid. In August 1997, Zipp objected to Ranger's claim in the bankruptcy proceeding on the basis that the claim was paid when the Bank honored Ranger's draft for the same amount sought in the claim. The bankruptcy court sustained the objection and disallowed Ranger's claim. At oral argument, counsel for Zipp represented that stock certificates and the note in favor of Ranger have been prepared and are being held pending the resolution of this proceeding.

Subsequently, on June 1, 1998, Zipp filed suit against Ranger in state court for breach of contract, breach of warranties under former section 5.111 of the Business and Commerce Code,[3] fraud, and negligent

1. This amount was subsequently lowered to $200,000.

2. Those related companies were Sunmark Grain, Inc., Zipp Industries, Inc. and Pax Industries, Inc. All subsequent references to Zipp are to the post-reorganization entity.

3. This statute was amended and recodified as section 5.110 of the Business and Commerce Code. Act of April 7, 1999, S.B. 85, § 1, 76th Leg., R.S. (Tex.Gen.Laws 1999). At the time Ranger presented its draft, section 5.111 provided:

5.111 Warranties on Transfer and Presentment
(a) Unless otherwise agreed the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the

misrepresentation. On August 24, 1999, the parties stipulated the relevant facts and filed a written agreement to that effect. On September 30, 1999, Ranger filed a motion seeking summary judgment. As bases for the judgment sought, Ranger asserted three general grounds: 1) the letter of credit contains no limitations upon its use, therefore any agreement limiting its use is ineffective because it could only be proven through parol evidence in violation of applicable statutes; 2) Zipp is estopped from asserting its claims against Ranger; and 3) there is no evidence of any modification of the terms of the letter of credit. Ranger also asserted additional specific arguments on its individual causes of action. In its December 5 order granting the motion, the trial court did not state the basis upon which it did so.

In pursuing its appeal, Zipp presents three issues. They are 1) whether the judgment was improper because of waiver or estoppel; 2) the exclusion of evidence under the parol evidence rule; and 3) whether there was no evidence supporting Zipp's causes of action.

■ The standards by which a summary judgment is reviewed are so well established that a detailed recitation of them is unnecessary. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546–49 (Tex. 1985). Less well established are the standards for reviewing a "no-evidence" motion for summary judgment under Rule 166a(i) of the Rules of Civil Procedure. Under that rule, a party may seek a summary judgment when there is no evidence of one or more essential elements of a claim or defense upon which an adverse party has the burden of proof. Because a no-evidence summary judgment is essentially the same as a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing both. *Roth v. FFP Operating Partners*, 994 S.W.2d 190, 195 (Tex.App.— Amarillo 1999, pet. denied).

■ Thus, the proper inquiry is whether the non-movant produced any probative evidence to raise a material fact issue. In answering this query, we consider all the evidence in the light most favorable to the party against whom the summary judgment was rendered and disregard all contrary evidence and inferences. *Id.* More than a scintilla of evidence exists when the evidence rises to a level such that reasonable and fair-minded people could differ in their conclusions. *Id.* Alternatively, less than a scintilla of evidence exists when the evidence does no more than create a mere suspicion of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). If the non-movant presents more than a scintilla of probative evidence to raise a genuine material fact issue, summary judgment would be improper. *Id.*

■ When a summary judgment does not specify the grounds upon which it is based, the judgment will be affirmed if any of the grounds presented in the motion are meritorious. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995). In view of this rule, even if some of Zipp's issues might be meritorious, the judgment may be affirmed on other grounds asserted in the motion.

### Waiver or Estoppel

■ As we have noted, Zipp's first issue asks us to determine if the trial court erred in granting the summary judgment on the basis of waiver or estoppel. In that regard, in its summary judgment motion, Ranger argued Zipp's claims are barred by the doctrines of waiver estoppel and *res judicata* because of the prior bankruptcy

necessary conditions of the credit have been complied with. This is in addition to any warranties arising under Chapters 3, 4, 7 and 8.

(b) Unless otherwise agreed a negotiating, advising, confirming, collecting or issuing bank presenting or transferring a draft or demand for payment under a credit warrants only the matters warranted by an intermediary under Chapters 7 and 8.

Acts 1967, 60th Leg, p. 2343, ch. 785, § 1, eff. Sept. 1, 1967.

litigation. Waiver occurs when a party either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *In re Epic Holdings, Inc.*, 985 S.W.2d 41, 57 (Tex.1998). *Res judicata*, also known by its more descriptive name of claim preclusion, prevents the relitigation of a claim or cause of action between the same parties that has, or could have been, finally adjudicated in a prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Application of the doctrine requires proof of the following elements: 1) a prior final judgment on the merits by a court of competent jurisdiction; 2) identity of parties or those in privity with them; and 3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Id.*

It is undisputed that the claims asserted in this proceeding were not asserted or litigated in the bankruptcy court. Thus, the issue before us is whether these claims could have been brought in that proceeding. Ranger contends that "the bankruptcy court clearly had jurisdiction over the matter [of its draw on the letter of credit] as it related to a claimed debt subject to the Plan and enforcement of the Plan." However, other than cases reciting the general elements of waiver and *res judicata*, Ranger cites no authority for that proposition. In arguing that proposition, it relies exclusively on the portion of the confirmation order reciting the matters over which the bankruptcy court was to retain jurisdiction. In opposing Ranger's theory, Zipp has cited several federal cases that discuss the extent of a bankruptcy court's post-confirmation jurisdiction.

*In re Haws*, 158 B.R. 965 (Bankr. S.D.Tex.1993) recognized that some reorganization plans, such as the one before us,

seek to expressly reserve the bankruptcy court jurisdiction over other issues. *Id.* at 969. The court noted, however, that a bankruptcy court's jurisdiction is limited to that granted by Congress or that necessary to effectuate a reorganization plan and it may not be expanded by the court's own action. *Id. See also In re Wood*, 825 F.2d 90 (5th Cir.1987) (discussing federal courts' bankruptcy jurisdiction). The relevant jurisdictional bounds of bankruptcy courts and federal district courts is set out in 28 U.S.C. §§ 157 and 1334 respectively.

The statute governing federal district courts, 28 U.S.C. § 1334, lists the following four types of bankruptcy matters over which these courts have jurisdiction:

(1) "cases under title 11,"

(2) "proceedings arising under title 11," and

(3) proceedings "arising in" a case under title 11, and

(4) proceedings "related to" a case under title 11.

■▬▬▬▬ The first listing, namely, "cases under title 11," refers to the bankruptcy petition itself. *Wood, supra* at 92. The other three types do not address different matters, but "identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts." *Id.* Consequently, in considering a jurisdiction question, the proper inquiry is whether a matter is at least "related to" the bankruptcy. *Id.* at 93. In *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984), the court articulated a standard that was adopted by the Fifth Circuit in the *Wood* case. *Wood*, 825 F.2d at 93. Under that standard, in the court's words, "a proceeding is 'related to' a bankruptcy if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See also Bass*, 171 F.3d 1016, 1022 (5th Cir.1999). In considering whether the present claims brought by the reorganized debtor could conceivably have any effect on the bankruptcy estate, we are guided by the case of *War-*

*ren v. Calania Corp.*, 178 B.R. 279 (M.D.Fla.1995). In *Warren,* after confirmation of the reorganization plan, the Chapter 11 debtor brought suit in state court against the attorney representing the committee of unsecured debtors alleging a breach of fiduciary duty. *Id.* at 280–81. The suit was removed to the bankruptcy court and, after the removal, the plaintiff sought remand to the state court on the basis that the bankruptcy court lacked subject matter jurisdiction. Remand was granted and the defendant appealed the remand order to the district court. The district court affirmed the remand finding that the proceeding could not conceivably affect the administration of the bankruptcy plan. In doing so, it reasoned that the mere possibility that a recovery from the action could be distributed by the bankruptcy court was not sufficient to vest jurisdiction in that court. *Id.* at 281.

Because the Zipp claims were neither brought under Title 11 nor "related to" a case under Title 11 as that term has been defined by the *Wood* court, they were not within the bankruptcy court's jurisdiction and could not have been asserted in the forum. That being so, the claim preclusion doctrine was not applicable and could not have supported the summary judgment in favor of *Ranger*.

■■■■ However, the estoppel doctrine has various branches, *Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 850–51 (Tex. 1980). For example, a judicial estoppel may be triggered by a party taking a misleading position in a legal proceeding, such as a debtor omitting to disclose an asset in bankruptcy. *Stewart v. Hardie,* 978 S.W.2d 203, 208 (Tex.App.—Fort Worth 1998, pet. denied). A common application of the doctrine is in instances in which a sworn declaration in one legal proceeding differs from the position taken by the declarant in a subsequent proceeding. *See Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956).

■■■■ This facet of the estoppel doctrine is intended to protect the integrity of the judicial system and is not limited to prior sworn declarations in judicial proceedings. *In Re Phillips,* 124 B.R. 712, 720 (Bkrtcy. W.D.Tex.1991). Thus, if a party takes an affirmative position in a proceeding and is successful in having the court adopt its position, the party doing so may be judicially estopped from later taking an inconsistent position in that or in another proceeding, even though the prior action is not a sworn declaration. *Id.*

In this case, Zipp asserted that Ranger had been paid and was not entitled to pursue its claim in the bankruptcy proceeding, the bankruptcy court accepted that argument, and Ranger's claim was disallowed. It now seeks to extract the money from Ranger, the payment of which caused the bankruptcy court, at Zipp's behest, to disallow Ranger's claim. If Zipp were successful, the effect would be that Zipp had used the judicial system to deprive Ranger both of its bankruptcy debt claim and the money that gave rise to that claim. That result is inequitable and Zipp is judicially estopped from attempting to achieve such an inequitable result.

### Parol Evidence

■■■■ As we have noted, in its second issue, Zipp contends the trial court erred in granting its summary judgment because of its exclusion of evidence under the parol evidence rule. Initially, we note that the parol evidence rule is not, strictly speaking, a rule of evidence. *See Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 31 (1958). It is a substantive rule of law which precludes the enforcement of inconsistent prior or contemporaneous agreements upon the execution of a valid integrated agreement with respect to a particular matter. *Carr v. Weiss,* 984 S.W.2d 753, 765 (Tex.App.—Amarillo 1999, pet. denied). Only after a contract is found to be ambiguous may parol evidence be considered for determining the true intent of the parties. *Friendswood Devel-*

*opment Co. v. McDade & Co.,* 926 S.W.2d 280, 283 (Tex.1996).

In its summary judgment motion, Ranger argued there could be no breach of contract "because there was no contract" between Ranger and Zipp which would limit Ranger's right to draw upon the letter of credit for reimbursement for grain losses. In doing so, it posited 1) there was no agreement because no restriction appeared in the letter of credit, and 2) any such agreement would be void because sections 5.104(a) and 26.02 of the Business and Commerce Code require modifications of letters of credit to be in writing. We disagree with both arguments.

In most transactions involving letters of credit, there are in fact two agreements involved underlying the letter. *Sun Marine Terminals v. Artoc Bank & Trust,* 797 S.W.2d 7 (Tex.1990). The first agreement is between the bank issuing the letter and its customer, and the second is between the customer, here Zipp, and the beneficiary of the letter, in this case, Ranger. Because Ranger was not a party to the letter of credit agreement, it cannot be liable for breach of that agreement. Zipp's claim is, as it must be, that Ranger breached a provision of the underlying agreement between Zipp and Ranger restricting Ranger's right to draw on the letter of credit.

As the *Sun Marine* court noted, the purpose of a letter of credit is to assure payment when its own terms have been met, without regard to disputes that may exist between the parties to the letter on the underlying transaction. 797 S.W.2d at 10. The commercial value of a letter of credit is this independence from the underlying transaction. *Id.*

That independence from the underlying transaction demonstrates the flaw in Ranger's argument. Although it is true that such conditions could have been added to the letter of credit, the mere fact that they were not attached, does not establish that there was no agreement between Zipp and Ranger concerning the manner by which Ranger could make its draws. Of course, any such agreement between Ranger and Zipp would not be binding upon the Bank.

Because any agreement between Ranger and Zipp would not modify the terms of the letter, Ranger's statute of frauds argument is unavailing. Parenthetically, in its summary judgment motion, Ranger did not argue that proof of an underlying agreement between it and Zipp, limiting the purposes for which Ranger could draw upon the letter of credit would violate the parol evidence rule, because it would contradict the terms of the bond agreement. Thus, that question is not before us and we express no opinion in that regard. Ranger's argument that the parol evidence rule would prevent any evidence of an underlying contract between it and Zipp is also unavailing.

In its third issue, Zipp challenges Ranger's no-evidence ground for summary judgment. In its arguments under this issue, Zipp addresses its claims for breach of warranties, negligent misrepresentation and fraud. Because Ranger's no-evidence ground also addressed Zipp's breach of contract claim, we also consider that claim in this discussion.

### Breach of Warranties

■ Zipp's breach of warranties claim is based upon former section 5.111(a) of the Texas Business and Commerce Code. That statute provided that when the beneficiary of a letter of credit presents a demand for payment, it warrants that the necessary conditions of the credit have been complied with. Zipp contends that Ranger breached this warranty because payment under the bond for grain losses was a condition precedent for a draft under the letter of credit. However, Ranger correctly notes this statute is not applicable where, as here, the letter of credit contains no condition precedent. To impose a condition not stated in the letter would do violence to the express language of the

letter that "it is not subject to any agreement, requirement, or qualification" and would be contrary to the independence principle discussed in *Sun Marine,* 797 S.W.2d at 10.

### Fraud

■ In its claim for common law fraud, Zipp alleged that Ranger "knowingly, willfully and maliciously represented to the issuing bank ... that Ranger's demand for payment conformed with the purpose of the standby letter of credit." In its summary judgment motion, Ranger asserted there was no evidence that Ranger made any representation to the Bank. We agree.

Ranger's draft on the letter of credit is included in the record. It contains no representation concerning the purpose of the demand. Zipp has presented no evidence of a representation to the Bank made outside of Ranger's draft on the letter of credit. Consequently, there is no evidence of any such representation as alleged by Zipp. Absent such a representation, Zipp could not recover on its fraud claim and summary judgment was proper in that respect.

### Breach of Contract

■ In its response to Ranger's summary judgment motion, Zipp presented evidence concerning the purpose of the letter of credit. It did not, however, produce any evidence that Ranger agreed to limit drafts on the letter to recover for grain shortage losses. Without evidence of such an agreement, Ranger's draft for premiums due would not be a breach of contract.

Apparently, Zipp takes the position that Ranger's draft for a purpose other than that originally contemplated by the parties, which it terms "breach of purpose," is actionable. However, it provided no authority for this proposition, we have been unable to locate any authority recognizing such a cause of action, and we refuse to recognize any such cause of action.

In its brief and at oral argument, Zipp emphasized the limiting effect of the bankruptcy plan confirmation upon Ranger's actions. In doing so, Zipp cites *In re Lacy,* 183 B.R. 890 (Bkrtcy.D.Colo.1995), for the proposition that the reorganization plan created a new contract between Ranger and Zipp. *Id.* at 892 n. 1. In its petition, Zipp alleged a breach of this contract. However, assuming arguendo that such a contract was created, Zipp's successful objection in the bankruptcy proceedings to Ranger's claim on the basis that it had been paid, would necessarily defeat any concept of such a resulting agreement between the parties.

Zipp also cites *In re W.F. Monroe Cigar Co.,* 166 B.R. 110, 112 (N.D.Ill.E.Div.1994), for the proposition that a creditor in Ranger's position "is limited to the terms and rights granted by the confirmed plan." *Monroe* dealt with the effect of a Chapter 11 bankruptcy proceeding upon a creditor's liens, and contained the statement that a creditor "can no longer enforce its pre-Chapter 11 lien rights, but is limited to the rights granted in the plan." *Id.* The case which the *Monroe* court cited as authority, *In re Arctic Enters., Inc.,* 68 B.R. 71, 79 (D.Minn.1986), noted that liens were an "interest" within the purview of 11 U.S.C. § 1141(c). Zipp has not cited any authority that one's status as the beneficiary of a letter of credit is an "interest" terminated by section 1141(c). Moreover, even if the bankruptcy plan would have discharged Ranger's claim for premiums, again, Zipp's successful post-confirmation objection to Ranger's inclusion in the plan on the basis it had been paid, would have removed any bar that might otherwise have been imposed by section 1141.

### Negligent Misrepresentation

■ Our supreme court has adopted the cause of action described in section 552 of the Restatement (Second) of Torts, commonly referred to as negligent misrepresentation. *See Federal Land Bank of Tyler v. Sloane,* 825 S.W.2d 439

(Tex.1991). The requisite elements for such a claim are 1) a representation made by the defendant in the course of the defendant's business, or in a transaction in which the defendant has a pecuniary interest; 2) the defendant supplied false information for the guidance of others in their business; 3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and 4) the plaintiff suffered pecuniary loss by justifiably relying upon the representation. *Sloane*, 825 S.W.2d at 442. *Harco Energy, Inc. v. Re Entry People, Inc.*, 23 S.W.3d 389 (Tex.App.—Amarillo 2000, no pet.).

In its summary judgment motion, Ranger argues that a claim for negligent misrepresentation can only exist if the representation "is made by a professional to a client with the knowledge that a third party, not in privity will rely upon the representation." However, that theory is not supported by the language of section 552, comments under the section, or in the cases Ranger cites. Indeed, the *Sloane* opinion demonstrates that a three-party transaction is not required. In that case, the representation at issue was one made by a bank loan officer to a borrower that a loan had been approved. 825 S.W.2d at 441. The customer commenced construction preparations based upon that representation, only to learn the loan had not been approved. *Id.* Under those facts, the supreme court permitted recovery by the customer.

Ranger's no-evidence claim is also relevant to this cause of action. In response to Ranger's summary judgment motion in this regard, Zipp cited and relied upon specific portions of the deposition testimony of Ranger officers James Hyde and Robert Sabo.

Hyde's deposition testimony included statements that the bond application did not mention the requirement of a letter of credit as collateral and that only a "clean, irrevocable letter of credit with no conditions" would satisfy Ranger's requirement. The following colloquy then ensued:

Q: The purpose of the letter of credit, if I understand what you said, Mr. Hyde, was to collateralize the bond, the grain warehouse bond.

A: Yes.

Q: Was there any other purpose for the letter of credit?

A: There was nothing ever put in the letter of credit that said it could not be used for any other purpose.

Q: But the purpose, though, for which Ranger required the letter of credit was to protect itself against losses in the event it was called upon to pay the bond [ ] is that correct?

A: The letter of credit was required as a condition to writing the bond. However, it was, there was nothing beyond that which limited it to that purpose only.

Zipp also cites the following portion of Sabo's deposition:

Q: Are those letters of credit ever given for the purpose of securing Ranger in the payment of premiums?

A: For insured, normally no.

Q: So, as a matter of policy, what you do is, if you've got what you believe to be a live letter of credit, regardless of the purpose for which it's given, you will draw on it if there are unpaid premiums?

A: If I have an unconditional letter of credit and I'm owed money, I will draw on it, yes.

Q: And it doesn't make any difference to you, the purpose for which the letter of credit was given?

A: Well I rely on the purpose as shown on the face of the document, which says it is unlimited.

*     *     *

Q: Did you make a requirement, did you or anybody in your department or anybody at Ranger make a requirement upon [Zipp] to give collateral for premiums?

A: I specifically did not, and I did not instruct anyone to do so. I don't know if anyone else did.

Neither of the depositions show a representation by Ranger to Zipp that 1) the letter of credit was for the sole purpose of securing payments made under the bond for grain losses, or 2) that Ranger would not draw on the letter of credit for reasons ·other than grain shortages. Without evidence of a representation, Zipp cannot meet the first element of a negligent misrepresentation claim.

Ranger's no-evidence summary judgment motion is sufficient to justify the trial court's claims for negligent misrepresentation or fraud in the inducement. Zipp's third issue is overruled.

In sum, because none of Zipp's issues reveal reversible error, all of them are overruled and the judgment of the trial court is affirmed.