Opinion issued April 13, 2006



     











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00764-CV




NEW PROCESS STEEL, L.P., Appellant

V.

SHARP FREIGHT SYSTEMS, INC., Appellee




On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2003-03267




MEMORANDUM OPINION

          In this appeal from a bench trial, appellant, New Process Steel, L.P., (“New
Process”) challenges the judgment of the trial court in favor of appellee, Sharp
Freight Systems, Inc. (“Sharp”) on New Process’s breach of contract and negligent
misrepresentation claims. In two issues on appeal, New Process raises contentions
which we construe as arguing that the evidence conclusively established that Sharp
breached its contract with New Process or, alternatively, that the great weight and
preponderance of the evidence shows that Sharp made negligent misrepresentations
to New Process.
          We affirm.
Background
          New Process is a steel processing facility that provides steel to customers
nationwide and in Mexico. To meet transportation needs, New Process formed an
agreement with Sharp. On April 25, 2002, Sharp contracted with Mega, a trucking
carrier, to transport New Process’s steel door skins. Mega transported New Process’s
materials via a trailer to Laredo, Texas. The trailer arrived safely in Laredo, and
Nepi, Inc., a freight forwarder,


 cleared the materials through customs. Tracomsa, a
Mexican transportation company, took possession of the trailer in Mexico to deliver
the materials to a final destination in Nuevo Leon, Mexico. During this final stage
of the trip, Tracomsa’s truck had an accident that rendered the materials
unsalvageable. New Process’s customer, Premdor, refused to accept the damaged
materials. 
          New Process continued doing business with Sharp until Sharp refused to pay
for the damaged steel door skins. New Process sued Sharp for breach of contract and
negligent misrepresentation. In its first amended petition, New Process described the
breach of contract as follows: “Sharp contracted with New Process to safely transport
New Process’s products to its customers in Mexico. Sharp destroyed the shipment
and failed to deliver the products to New Process’s customer and thereby breached
its contract with New Process.” 
          After a bench trial, the trial court found that New Process contracted with
Sharp to carry New Process’s products to Laredo, Texas, that the bill of lading
constituted the entire contract between New Process and Sharp, and that Sharp
fulfilled its part of the bargain. The court further found that Sharp contracted with
Mega to transport the shipment from Houston to Laredo, that New Process contracted
with Nepi to take control of the shipment as the freight forwarder, and that either New
Process or Nepi contracted with Tracomsa to transport the shipment to Nuevo Leon,
Mexico. Thus, Sharp was not liable to New Process for damages to the steel door
skins that occurred after Sharp fulfilled its obligations to New Process. New Process
appeals from the trial court’s findings. The trial court did not distinguish between
findings of fact and conclusions of law.
 
Standard of Review
          In an appeal from a bench trial, a trial court’s findings of fact have the same
weight as a jury’s verdict. Amador v. Berrospe, 961 S.W.2d 205, 207 (Tex.
App.—Houston [1st Dist.] 1996, writ denied). Because New Process does not specify
the level of scrutiny it wants applied to the record, we will review both the legal and
factual sufficiency of the evidence supporting the judgment. We review the legal and
factual sufficiency of the evidence by the same standards applied in reviewing
evidence supporting a jury’s answer. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994). If a party attacks the legal sufficiency of an adverse finding on an issue as to
which he bears the burden of proof, then he must demonstrate on appeal that the
evidence conclusively established all vital facts in support of the issue. Sterner v.
Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). In reviewing such a “matter of
law” challenge, we examine the record for evidence that supports the challenged
finding and ignore evidence to the contrary. Id. If no evidence exists to support the
finding, we examine the entire record to determine if the contrary proposition is
established as a matter of law. Id.
          In reviewing a factual-sufficiency point, we consider all the evidence
supporting and contradicting the finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the finding is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
          We review de novo a trial court’s conclusions of law and uphold them on
appeal if the judgment can be sustained on any legal theory supported by the
evidence. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794–95 (Tex.
2002); In re Moers, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no
pet.). An appellant may not challenge a trial court’s conclusions of law for lack of
factual sufficiency, but we review the legal conclusions drawn from the facts to
determine their correctness. BMC Software Belgium, 83 S.W.3d at 794. 
Unchallenged findings of fact are binding on the court of appeals “unless the contrary
is established as a matter of law, or if there is no evidence to support the finding.” 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986). In a bench trial, the trial
court, as factfinder, is the sole judge of the credibility of the witnesses. Southwestern
Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992,
writ denied). The trial court has the right to accept or reject any part or all of a
witness’s testimony. See Hood v. Texas Indem. Ins. Co., 209 S.W.2d 345, 346 (Tex.
1948). The court may believe one witness and disbelieve others and may resolve
inconsistencies in any witness’ testimony. See McGalliard v. Kuhlmann, 722 S.W.2d
694, 697 (Tex. 1986). 
Breach of Contract
          In its first issue regarding its breach of contract claim, New Process challenges
the following findings:
                    1.       New Process Steel, L.P. (“New Process”) contracted with Sharp
Freight Systems, Inc. (“Sharp”) for the carriage of its products to
Premdor, in Laredo, Texas.
 
                    2.       The bill of lading dated on or about April 25, 2002 constitutes the
contract between the parties.
 
                    3.       The invoice dated May 13, 2002 does not constitute any part of
the agreement between the parties.
 
                    4.       On or about April 25, 2002, Sharp accepted a shipment of New
Process’s steel products for delivery to Laredo, Texas.
 
                    6.       Sharp fulfilled its contractual obligations upon the delivery in
Laredo, Texas and in all ways complied with its contract.
 
                    7.       On or about April 25, 2002, Sharp arranged for Mega to transport
the shipment from Houston to Laredo, Texas.
 
                    8.       On or about April 25, 2002, Nepi, Inc. (“Nepi”) took possession
of the steel product and arranged for Tracomsa to transport the
shipment to Premdor, the consignee in Nuevo Leon, Mexico.
 
                    10.     Sharp did not arrange for Tracomsa to transport the shipment to
Nuevo Leon, Mexico.
 
                    11.     New Process hired Nepi as the freight forwarder. 
 
                    12.     Nepi or New Process entered into an agreement with Tracomsa to
transport the shipment to Nuevo Leon, Mexico where Premdor,
the consignee, would take possession of the shipment.
 
                    14.     Sharp was not the agent of Mega Carriers, Inc. (“Mega”).
 
                    17.     New Process paid $350.00 to the forwarding agency, Nepi, Inc.
 
                    20.     No act/or omission of Sharp proximately caused New Process
actual damages.
 
                    22.     New Process entered into an agreement with Nepi, Inc. as its
freight forwarder, to take control of the shipment, clear customs
and take control of the shipment to a warehouse in Mexico.

          The parties do not dispute that they entered into an agreement for Sharp to
arrange transportation of New Process’s materials. However, the parties do dispute
the terms of the agreement. New Process maintains that it had an agreement with
Sharp to transport its materials from Houston to its customer, Premdor, in Monterrey,
Mexico. New Process argues that the terms of the contract originated from a “series
of instruments created by the parties during their course of dealing, including the
initial agreements between Tammy Ward and Steven White.” New Process contends
that when the parties exchanged a bill of lading and an invoice from Sharp, the parties
completed the agreement. Essentially, New Process contends that the contract
consists of negotiations between the parties, New Process’s bill of lading, and an
invoice from Sharp, which together evince a partially memorialized and partially oral
contract under which Sharp undertook to transport the steel door skins from Houston
to Monterrey. Sharp contends that the agreement consisted solely of the bill of lading
which specified that Sharp would arrange transportation to Laredo, Texas only. 
          The elements of a valid contract are (1) an offer; (2) an acceptance; (3) a
meeting of the minds; (4) each party’s consent to the terms; and, in the case of a
written contract, (5) execution and delivery of the contract with the intent that it be
mutual and binding. Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636
(Tex. App.—Houston [1st Dist.] 2002, pet. denied); Copeland v. Alsobrook, 3 S.W.3d
598, 604 (Tex. App.—San Antonio 1999, pet. denied). The determination of a
meeting of the minds, and thus offer and acceptance, is based on the objective
standard of what the parties said and did, not on their subjective states of mind. 
Copeland, 3 S.W.3d at 604. The parties must agree to the material terms of a contract
before a court can enforce the contract. T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 221 (Tex. 1992). A contract, whether written or oral, must define
its essential terms with sufficient precision to enable the court to determine the
obligations of the parties. Estate of Eberling v. Fair, 546 S.W.2d 329, 333 (Tex. Civ.
App.—Dallas 1976, writ ref’d n.r.e.). 
          Findings 1, 2, 3, 4, 6, 7, and 20
          Here, the agreement between New Process and Sharp is comprised of the April
25, 2002 bill of lading and the May 13, 2002 invoice.


 See Jones v. Kelley, 614
S.W.2d 95, 98 (Tex. 1981). These documents contain all the essential terms of the
parties’ agreement. See Stinger v. Stewart & Stevenson Serv., Inc., 830 S.W.2d 715,
720 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (holding that to have a
binding contract, essential terms must be sufficiently certain to define rights of
parties). The bill of lading, which was drafted by New Process, describes the
materials to be shipped and states where to ship the materials.


 The bill of lading
states that the destination is Premdor C/O Nepi, Inc. in Laredo, Texas and that the
carrier is Sharp/Mega. The invoice


 provides the cost to arrange shipping of the
materials, in this case, $895.00. Also, the invoice states under the “Description”
heading, “Nepi, Inc.–Laredo, TX.” The testimony of Carl Eaton, Sharp’s regional
vice-president, confirmed that this line indicated where Sharp delivered the product. 
Moreover, Eaton’s testimony supports the trial court’s findings that Sharp agreed to
arrange shipping from Houston to Laredo. Specifically, Eaton testified that Sharp
agreed to deliver the materials to Laredo, Texas. Because the agreement called for
Sharp to arrange shipping to Laredo, Texas only, and because the damage to New
Process’s steel happened in Mexico, no act by Sharp caused damages to New Process. 
Based on the bill of lading, the invoice, and the evidence presented at trial, we
conclude that legally sufficient evidence supports the trial court’s findings 1, 4, 6, 7
and 20. Thus, although the trial court’s conclusions of law in findings 2 and 3 are
erroneous, we will not reverse the judgment, because the controlling findings of fact
support a correct legal theory. 
          New Process contends, however, that the evidence presented at trial shows that
the trial court’s findings are factually insufficient. Specifically, New Process argues
that Steven White, the transportation manager at New Process, testified that before
the shipment date he had conversations with Tammy Ward, a sales representative for
Sharp, that a shipping route to Premdor in Monterrey would cost $895. New Process
also cites to Ward’s testimony as agreeing that it would cost $895 to ship to Premdor. 
          We note that Ward’s testimony was inconsistent and conflicted at different
points and was contradicted by testimony from Eaton. Furthermore, Ward did not
testify that Sharp would arrange shipping all the way to Monterrey, Mexico. Rather,
she testified that transportation of the shipment down to Mexico was $895. She also
testified that Sharp contracted with Mega to transport New Process’s materials to
Mexico. Eaton testified, however, that Sharp agreed to deliver the materials to
Laredo, Texas to Nepi in care of or for the beneficial owner of Premdor. We take
judicial notice that Laredo, Texas is on the border between the United States and
Mexico and that the city extends on the other side of the border as Nuevo Laredo.


 
          Ward’s testimony is ambiguous. If it is construed as testimony that New
Process contracted with Sharp to arrange delivery of the steel door skins to the
border, it is consistent with the written contract. If it is construed as testimony that
New Process contracted with Sharp to arrange delivery to Nuevo Leon, it is
inconsistent with the written documents and other testimony. Prior oral statements
inconsistent with the terms of a subsequent written agreement are barred from
consideration by the parol evidence rule. See Gonzalez v. United Bhd. of Carpenters
and Joiners of Am., 93 S.W.3d 208, 211 (Tex. App.—Houston [1st Dist.] 2003, no
pet.). Accordingly, we hold that the trial court’s above-stated findings are supported
by legally and factually sufficient evidence. 
          Findings 8, 10, 11, 12, 17, and 22
          The other challenged findings, concerning transportation of the steel door skins
into Mexico to its final destination, are both consistent with the evidence and our
interpretation of the contract. Essentially, the trial court found that Nepi, the freight
forwarder that was hired by New Process for $350.00, took possession of the
materials in Laredo and had Trancomsa transport the materials to Premdor. The court
further found that either New Process or Nepi hired Trancomsa to make the delivery
to Premdor. Finally, the court found that New Process had an agreement with Nepi
to take control of the shipment, clear customs, and deliver the shipment to a
warehouse in Mexico. 
          Here, the evidence shows that Nepi was the freight forwarder hired by
Premdor


 to handle the customs documents so that the materials could enter Mexico. 
The bill of lading expressly states that the materials were to be shipped to Premdor
C/O of Nepi, Inc. in Laredo. In addition, Eaton testified that Sharp was to deliver the
materials to Nepi. Eaton also testified that once the truck was delivered to Laredo,
the trailer was turned over to Nepi, which turned the trailer over to a Mexican carrier. 
Although New Process argues that there is no evidence in the record that Nepi
arranged for carriage, Eaton testified that he did not know who hired Tracomsa, but
that he understood that Nepi would have been the one to hire the Mexican carrier to
transport the materials to the final destination. New Process’s exhibit four indicates
that Nepi generated a bill of $350.00 and that New Process included this amount in
its demand letter to Sharp. Accordingly, we conclude that legally and factually
sufficient evidence supports the trial court’s findings.
          Finding 14
          New Process does not disagree with the trial court’s finding 14, but contends
that Mega, which transported the shipments to Laredo, was an agent of Sharp. 
Because this issue is irrelevant to our disposition, we decline to address it. See Tex.
R. App. P. 47.1.
          We overrule New Process’s first issue on appeal.
Negligent Misrepresentation
          In its second issue on appeal, New Process argues that the trial court’s findings
on its negligent misrepresentation claim are factually insufficient. In its negligent
misrepresentation claim, New Process challenges the following findings:
          21.     No representative of Sharp made any false representation
to any representative of New Process regarding Sharp’s
liability for the shipment in the event the shipment was
damaged or destroyed while in transport.
 
          23.     Sharp’s representations were not a proximate cause of any
injury or damage suffered by New Process.
 
          24.     Sharp had no duty to New Process independent of the duty
arising from the April 25, 2002 bill of lading. 
Accordingly, damages, if any, arising from any alleged
misrepresentation are barred. The only loss that New
Process suffered as a consequence of Sharp’s acts or
omissions, if any, is the subject matter of the bill of lading.

          The elements of a claim for negligent misrepresentation are as follows: 1) a
representation was made by the defendant in the course of the defendant’s business,
or in a transaction in which the defendant has a pecuniary interest; 2) the defendant
supplied false information for the guidance of others in their business; 3) the
defendant did not exercise reasonable care or competence in obtaining or
communicating the information; and 4) the plaintiff suffered pecuniary loss by
justifiably relying upon the representation. Federal Land Bank Ass’n v. Sloane, 825
S.W.2d 439, 442 (Tex. 1991); Zipp Indus., Inc. v. Ranger Ins. Co., 39 S.W.3d 658,
668 (Tex. App.—Amarillo 2001, no pet.). The sort of “false information”
contemplated in a negligent misrepresentation case is a statement of existing fact, not
a promise of future conduct. See Swank v. Sverdlin, 121 S.W.3d 785, 802 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied); Allied Vista, Inc. v. Holt, 987 S.W.2d
138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).
          New Process contends that Tammy Ward, on behalf of Sharp, made negligent
misrepresentations to the effect that if something were to happen to New Process’s
materials, Sharp would pay for any damages. 
          We hold that New Process’s claim that Sharp made a negligent
misrepresentation cannot stand because the misrepresentation, if any, was a promise
of future conduct—that if New Process’s materials were damaged at some
unforeseeable time in the future, Sharp would pay for those damages.


 Because the
evidence shows that Sharp’s statements concern future conduct, rather than a
statement of existing fact, New Process cannot recover on its negligent
misrepresentation claim. See Swank, 121 S.W.3d at 802.
          We overrule New Process’s second issue on appeal. 
 
Conclusion
          We affirm the judgment of the trial court.
 



                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Nuchia, Keyes, and Hanks.